UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZENAS ZELOTES, Esq., : | |
| Plaintiff, : | |
| : | |
| v. : | Case No: 3:05cv1591 (PCD) |
| : | |
| DIANA G. ADAMS, in her official capacity : | |
| as Acting United States Trustee, Region 2, : | |
| Defendant. : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT AND RECONSIDERATION

Plaintiff brings this action challenging the constitutionality of one provision of the Bankruptcy Code enacted in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Specifically, Plaintiff challenges 11 U.S.C. § 526(a)(4) as violative of the First Amendment. On July 31, 2006, Defendant moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint for failure to state a claim. This Court denied Defendant's Motion to Dismiss on November 7, 2006, finding that 11 U.S.C. § 526(a)(4) was overbroad and restricted attorney speech beyond what was narrow and necessary to further the governmental interest in curbing abusive practices, and therefore holding that § 526(a)(4) is facially unconstitutional. Based on that decision, Plaintiff filed a Motion for Summary Judgment on November 16, 2006, asking this Court to enter a judgment declaring § 526(a)(4) unconstitutional and enjoining its enforcement. In response, Defendant moved for reconsideration of this Court's November 7, 2006 Ruling on Defendant's Motion to Dismiss and for summary judgment. For the reasons that follow, Plaintiff's Motion for Summary Judgment [Doc. No. 19] is **granted**; Defendant's Motion for Summary Judgment [Doc. No. 21] is **denied**; and Defendant's Motion for Reconsideration [Doc. No. 22] is **granted**, however, the prior ruling

is adhered to.

## I. BACKGROUND

Plaintiff is a bankruptcy attorney licensed in the State of Connecticut who maintains law offices in New London, Shelton and Hartford, Connecticut. (Compl. ¶ 5.) Plaintiff asserts that he is a "Debt Relief Agency," as defined by 11 U.S.C. § 101(12A),[1] and his clients are "Assisted Persons," as defined by 11 U.S.C. § 101(3).[2] (Id. ¶ 6.) Defendant Diana G. Adams[3] is being sued in her official capacity as Acting United States Trustee, Region 2. As a United States Trustee, Defendant is one of the officials charged with enforcing the provision at issue here.

## II. STANDARD OF REVIEW

Reconsideration will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted) (cautioning that "where litigants have once battled for the

---

[1] "The term 'debt relief agency' means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 [11 USCS § 110]." 11 U.S.C. § 101(12A). Other district courts have held that bankruptcy attorneys fall within the definition of "Debt Relief Agency." See Olsen v. Gonzales, 350 B.R. 906, 912 (D. Or. 2006); Hersh v. United States, 347 B.R. 19, 23 (N.D. Tex. 2006); Milavetz, Gallop & Milavetz P.A. v. United States, No. 05-CV-2626, 2006 U.S. Dist. LEXIS 88785 (D. Minn. Dec. 7, 2006); but see In re Reyes, No. 06-15957-BKC-AJC, 2007 Bankr. LEXIS 123, at *9 (Bankr. S.D. Fla. Jan. 17, 2007) (holding that "Congress did not intend to include attorneys in the category of 'debt relief agency'"). Defendant concedes that Plaintiff meets this definition. (Def.'s Local Rule 56(a)(1) Statement ¶ 2.)

[2] "The term 'assisted person' means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $150,000." 11 U.S.C. § 101(3). Defendant concedes that Plaintiff's clients include individuals whose debts consist primarily of consumer debts and whose nonexempt property is valued at less than $150,000, and who thereby meet the definition of "assisted person." (Def.'s Local Rule 56(a)(1) Statement ¶ 3.)

[3] Pursuant to Federal Rule of Civil Procedure 25(d), Diana G. Adams, Acting United States Trustee for Region 2, is substituted for Deirdre A. Martini, the former United States Trustee for Region 2.

court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). This Court will not grant a motion to reconsider "where the moving party seeks solely to relitigate an issue already decided," to "plug gaps in an original argument or to argue in the alternative once a decision has been made." Id.; Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (citations omitted). The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court. Shrader, 70 F.3d at 257. Ultimately, however, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. See Virgin Atl., 956 F.2d at 1255.

## III. DISCUSSION

### A. Defendant's Motion for Reconsideration

11 U.S.C. § 526(a)(4), the provision at issue here, provides:

> A debt relief agency shall not . . . advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4). If an attorney violates this provision, he or she may be obligated to return "any fees or charges" paid to him or her by the debtor-client along with "actual damages" and "reasonable attorneys' fees." 11 U.S.C. § 526(c)(2)(A). Moreover, state attorneys general may bring actions to enjoin violations of § 526 and recover damages for debtors, and a court on its

3

own motion, the United States Trustees or debtors may bring actions seeking injunctive relief or civil penalties. 11 U.S.C. §§ 526(c)(3), (5).

In the Ruling on Defendant's Motion to Dismiss, this Court, following the reasoning set forth in Hersh v. United States, 347 B.R. 19 (N.D. Tex. 2006) and Olsen v. Gonzales, 350 B.R. 906 (D. Or. 2006),[4] stated that "[b]y prohibiting lawyers from advising clients to take lawful, prudent actions as well as abusive ones, § 526(a)(4) is overbroad and restricts attorney speech beyond what is 'narrow and necessary' to further the governmental interest," and therefore held that it is facially unconstitutional. Zelotes v. Martini, 352 B.R. 17, 25 (D. Conn. 2006).

Defendant does not raise new arguments in its Motion for Summary Judgment and Reconsideration, but merely reiterates and elaborates on an argument that was rejected in the Ruling on Defendant's Motion to Dismiss. Specifically, Defendant asserts that the Ruling on the Motion to Dismiss was predicated on an erroneous interpretation of the scope of § 526(a)(4)'s prohibition on attorney speech. Defendant notes that § 526(a)(4) prohibits an attorney only from advising an assisted person "to incur more debt in contemplation of" filing for bankruptcy. Defendant argues that this language should be read as "prohibit[ing] an attorney only from advising a debtor to take on more debt solely *because* he or she intends to file for bankruptcy, as such advice is aimed at allowing the debtor to violate the law (by running up debt primarily because it will not need to be repaid) or otherwise 'game' the means test (by piling up enough

---

[4] At the time that this Court issued its Ruling on Defendant's Motion to Dismiss, Hersch and Olsen were the only two district courts that had addressed the constitutionality of 11 U.S.C. § 526(a)(4). Since that time, two other courts have found § 526(a)(4) to be unconstitutional. See Milavetz, 2006 U.S. Dist. LEXIS 88785; In re Reyes, 2007 Bankr. LEXIS 123 at *5-6.

4

debt to avoid a presumption of abuse).'"[5] (Def.'s Mem. Supp. 3.)

Defendant argues that its interpretation of § 526(a)(4)'s phrase "in contemplation of" is consistent with and supported by the Supreme Court's interpretation of similar language in an estate tax statute in United States v. Wells, 283 U.S. 102, 51 S. Ct. 446, 75 L. Ed. 867 (1931). The issue in Wells was whether certain transfers made by the decedent to his children prior to his death should be included in his gross estate for purposes of the estate tax. In resolving this issue, it was necessary for the Court to interpret the phrase "in contemplation of death," as used in § 402(c) of the Revenue Act of 1918. The Court found that the "test" is the decedent's motive, and noted that "it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers." Wells, 283 U.S. at 117. The Court held that the phrase "in contemplation of death" meant "that the thought of death is the impelling cause of the transfer," but qualified this with the recognition that "there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death.'" Id. at 118-19. The Court also found that the rule laid down by the Court of Claims—i.e., "requiring that there be a condition 'creating a reasonable fear that death is near at hand,' and that 'such reasonable fear or apprehension' must be 'the only cause of the transfer'"—was too narrow, holding that "[i]t is sufficient if contemplation of death be the inducing cause of the transfer whether or not death is believed to be near." Id. at 119.

---

[5] The "means test" is used to determine whether the presumption that a Chapter 7 filing is abusive should apply. If the filing is determined to be abusive, it is dismissed or converted to a Chapter 11 or 13 filing. 11 U.S.C. § 707(b)(1). Under this test, an abuse of the bankruptcy system is presumed when the amount of the debtor's income, after deduction of certain expenses and other specified amounts, exceeds specified thresholds. 11 U.S.C. § 707(b)(2)(A).

This reasoning is applicable here, albeit not for the purposes noted by Defendant. Just as the phrase "in contemplation of death" was not capable of precise delineation, so with the phrase "in contemplation of" filing for bankruptcy. As in <u>Wells</u>, the interpretation set forth by Defendant—i.e., that "a debt incurred in contemplation of bankruptcy is a debt incurred solely because the client is filing for bankruptcy (i.e., a debt incurred to 'game' or 'abuse' the system)"—is too narrow. (Def.'s Mem. Supp. 4.) The fact that Defendant found it necessary to add "i.e., a debt incurred to 'game' or 'abuse' the system" to its definition supports the Court's conclusion that the language in the statute should not be read so narrowly. Congress did not qualify or narrow the phrase as Defendant does, but chose the broad language "in contemplation of such person filing a case under this title." Under this language, it is sufficient if "contemplation of" filing for bankruptcy is simply the *inducing* cause of the transfer, regardless of whether it is the only cause or whether the debt is incurred for a fraudulent purpose.

Notwithstanding Defendant's argument to the contrary, this Court finds that § 526(a)(4) encompasses and thereby prohibits attorneys from advising their clients to take various lawful, financially prudent actions prior to filing for bankruptcy. For example, it might be finally prudent for a debtor considering bankruptcy to (1) obtain a mortgage or refinance a mortgage at a lower rate in order to reduce payments, pay off various other debts or obtain a lower interest rate prior to entering bankruptcy, (2) take on secured debt, such as an automobile loan, that would survive bankruptcy while enabling the debtor to continue to get to work and make payments, (3) take out a loan to pay the filing fee in a bankruptcy case or to obtain the services of a bankruptcy

attorney, (4) take out a loan to convert a non-exempt asset to an exempt asset,[6] or (5) co-sign undischargeable student loans. See Hersh, 347 B.R. at 24; Olsen, 350 B.R. at 916; Milavetz, 2006 U.S. Dist. LEXIS 88785 at *9 n.2; Chemerinsky, 79 AM. BANKR. L.J. at 579. As Chemerinsky noted, "[t]here would be no fraud in [incurring these debts] if the client intended to pay such debt notwithstanding the filing of a contemplated bankruptcy case." Id. In some cases, these actions may even prevent the bankruptcy in the first place. Defendant argues that this means that § 526(a)(4) would not apply, however, here, as in Wells, "[i]t is contemplation of [filing for bankruptcy], not necessarily contemplation of imminent [filing], to which the statute refers." 283 U.S. at 117. Even though these debts may be incurred for other, legitimate reasons, the fact that they are incurred prior to filing for bankruptcy and for reasons related to the bankruptcy means that they are encompassed by the language "in contemplation of" filing for bankruptcy.

It is not necessary to determine whether, as Defendant argues, § 526(a)(4) is an ethical regulation, and thus subject to the Gentile standard, or whether it is a content-based regulation of attorney speech subject to strict scrutiny. Because § 526(a)(4) is found to violate the First Amendment under either standard, it will be analyzed under the more lenient Gentile standard.[7]

---

[6] Defendant argues that "such a conversion may not involve incurring debt," and if it does not, § 526(a)(4) has no application. Defendant is correct, however, for those instances where such a conversion does involve a loan, § 526(a)(4) would apply.

[7] It is doubtful whether Defendant would prevail with its argument that § 526(a)(4) is an ethical regulation. Nothing in the § 526(a)(4) nor any other part of the section alludes to ethics or purports to be an ethical principle. The section is titled "Restrictions on debt relief agencies," and clearly defines and prohibits the giving of certain advice. Although bankruptcy attorneys fall within the definition of "debt relief agencies," the provision also applies to non-attorneys. See In re Reyes, 2007 Bankr. LEXIS 123 at *6-9. When viewed in its entirety, § 526(a)(4) appears to be a content-based regulation on speech. See Hersh, 347 B.R. at 24 n.8; Olsen, 350 B.R. at 915 n.5; Milavetz, 2006 U.S. Dist. LEXIS 88785 at *7-8.

In Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991), the Supreme Court balanced lawyers' First Amendment interests "against the State's legitimate interest in regulating the activity in question," and held that an ethical restriction imposed on attorney speech was permissible where it (1) served the State's legitimate interest, i.e., prohibiting speech that would create a substantial likelihood of material prejudice to judicial proceedings, and (2) "impose[d] only narrow and necessary limitations on lawyers' speech." Id. at 1073-75.

Even assuming that the government interests proffered by Defendant are legitimate,[8] § 526(a)(4) is not sufficiently narrow. As discussed above, taking on more debt in contemplation of filing for bankruptcy does not necessarily constitute abuse. The statute prohibits *all* advice regarding debt incurred in contemplation of bankruptcy rather than restricting its reach to false or fraudulent advice or advice given to assist the debtor in "gaming" or "abusing" the system. As such, § 526(a)(4) prohibits attorneys, in certain instances, from giving the best and most complete advice to their clients. This Court held in its prior ruling, and reaffirms here, that "[b]y prohibiting lawyers from advising clients to take lawful, prudent actions as well as abusive ones, § 526(a)(4) is overbroad and restricts attorney speech beyond what is 'narrow and necessary' to further the governmental interest."[9] Zelotes, 352 B.R. at 25 (citing Gentile, 501 U.S. at 1075;

---

[8] The legitimate interests advanced by Defendant include the government's interests in (1) protecting debtors from attorneys who might advise them to engage in abusive practices which could result in a denial of discharge of debts under 11 U.S.C. § 523 or § 727 or the denial of a chapter 13 plan under § 1325(a)(7) and (2) avoiding the time and expense of dismissing abusive filings incurred by the court, the creditors and the United States Trustee. (Defs.' Mem. Supp. 7.)

[9] The Court does not need to go so far as to find that the law is unconstitutionally vague and overbroad; it is sufficient to hold that as applied, § 526(a)(4) unconstitutionally prevents attorneys from providing lawful, truthful information to their clients. See Milavetz, 2006 U.S. Dist. LEXIS 88785 at *13 n.4.

8

Hersh, 347 B.R. at 25; Olsen, 350 B.R. at 916); see also Milavetz, 2006 U.S. Dist. LEXIS 88785 at *11 ("Attorneys have a First Amendment right—let alone an established professional ethical duty—to advise and zealously represent their clients."). As opposed to the ethical regulation at issue in Gentile, which was upheld on the ground that it "applies only to speech that is substantially likely to have a materially prejudicial effect," "is neutral as to points of view, applying equally to all attorneys participating in a pending case," and "merely postpones the attorneys' comments until after the trial," see 501 U.S. at 1075-76, § 526(a)(4) applies to and prohibits attorney advice to take lawful, prudent actions prior to filing for bankruptcy and is not neutral as to points of view, thereby "prohibit[ing] the analysis of certain legal issues and [] truncat[ing] presentation to the courts." Legal Services Corp. v. Velazquez, 531 U.S. 533, 545, 121 S. Ct. 1043, 149 L. Ed. 2d 63 (2001).

What is required here "is a 'fit' between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served;' that employs not necessarily the least restrictive means but, as we have put it in the other contexts discussed above, a means narrowly tailored to achieve the desired objective." Bd. of Trs. v. Fox, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (internal quotation marks and citations omitted). The Court finds that the "fit" obtained here is not reasonable and that the means chosen by Congress in § 526(a)(4) to remedy certain abuses in the bankruptcy system is not "in proportion to the interest served." Because § 526(a)(4) is not sufficiently "narrowly tailored to achieve the desired objective," it is unconstitutional as applied to bankruptcy attorneys.

9

**B.     Scope of Injunctive Relief**

Plaintiff seeks an order declaring § 526(a)(4) unconstitutional and enjoining its enforcement, however, Defendant argues that Plaintiff is, at most, entitled to a narrowly-tailored injunction applicable only to him.  Plaintiff does not oppose Defendant's argument.

Traditionally, the rule is that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979).  Under Federal Rule of Civil Procedure 65(d), an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."  Injunctive relief generally should be limited to apply only to named plaintiffs where no class has been certified, see Zepeda, 753 F.2d at 727-28 & n.1, however, "an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled*." Bresgal v. Brock, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (emphasis in original); see also Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1501-1502 (9th Cir. 1996).

No class has been certified and there is only one named plaintiff in this action.  An injunction applying only to Plaintiff—i.e., barring Defendant from enforcing § 526(a)(4) against him—will provide Plaintiff with complete relief.  It is not necessary to make the injunction any broader.  For these reasons, and because Plaintiff does not argue in favor of a broader injunction, the Court will enter the following limited injunction:

Diana G. Adams, as Acting United States Trustee, Region 2, and any subsequent United States Trustee, Region 2, are hereby permanently enjoined from enforcing 11 U.S.C. § 526(a)(4) against Zenas Zelotes, Esq.

This injunction shall remain permanently in force until such time as 11 U.S.C. § 526(a)(4) is amended or modified so as to remove the prohibition on debt relief agencies from "advis[ing] an assisted person or prospective assisted person to incur more debt in contemplation of such person" filing for bankruptcy.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. No. 19] is **granted**; Defendant's Motion for Summary Judgment [Doc. No. 21] is **denied**; and Defendant's Motion for Reconsideration [Doc. No. 22] is **granted**, however, the prior ruling is adhered to.

SO ORDERED.

Dated at New Haven, Connecticut, February 27, 2007.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court